Case 4:21-cv-02276 Document 49 Filed on 01/12/23 in TXSD Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
January 13, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROY WILLIAMS, TDCJ #00828343, | § § § | |
| *Plaintiff*, | § § § | |
| v. | § § | CIVIL ACTION NO. H-21-2276 |
| ESTELLE UNIT PRISON OFFICIALS, | § § § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Roy Williams, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983 against Texas Department of Criminal Justice ("TDCJ") employees Jacob Little, Zachary Anderson, Dennis Ayienda, Diogne Simo-Wassu, Dominic Yanez, Oyinye Omeludike, Azeez O. Sanusi, and Caleb Brumley (the "TDCJ Defendants") and University of Texas Medical Branch ("UTMB") employee Melissa Northcutt.[1]

Defendants filed a motion for summary judgment (Docket Entry No. 44), to which plaintiff filed a response in opposition (Docket Entries No. 45, 46, 47).

Having considered the motion, the response, the complaint, the probative summary judgment evidence, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons explained below.

---

[1] Defendants refer to defendant Northcutt as "Melissa Northcutt." UTMB medical records refer to her as "Michelle Northcutt." (Docket Entry No. 44-1, Exhibit A at 47.)

## I. BACKGROUND AND CLAIMS

On June 13, 2021, plaintiff was involved in two use of force incidents at the Estelle Unit. (Docket Entry No. 44-1, Exhibit A at 99.) According to the ensuing disciplinary charges lodged against him, plaintiff had refused to submit to hand restraints, and a use of force team was called in to restrain him. *Id.* at 99–100. Plaintiff was then transported to a holding cell, where he refused to relinquish the hand restraints. A second use of force was used, with deployment of a cell extraction team and pepper spray to regain control of the hand restraints.

Plaintiff's medical records show that he was given a use of force examination by defendant UTMB registered nurse Northcutt immediately following the incidents. Northcutt documented that "[p]atient denies any injuries and denies respiratory difficulty," that "[n]o visible injuries or respiratory distress noted," and that there were "[n]o adverse health effects from use of force." *Id.* at 47. Plaintiff was released to security. A few hours later, security reported to infirmary staff that plaintiff had "a scant amount of blood" near his eyebrow. *Id.* at 51. Non-defendant staff nurse Rick Stancil responded to the call, but when he arrived at plaintiff's cell, he noted that plaintiff was "yelling and acting out" and "trying to pull the toilet up," and an examination of the injury could not be safely undertaken. *Id.* Stancil was able to examine plaintiff later that day, and a small skin tear near plaintiff's eyebrow was cleansed and treated with steri-strips. *Id.* at 49.

The disciplinary charges against plaintiff encompassed both of the incidents – his refusal to submit to hand restraints and his subsequent refusal to relinquish the restraints. *Id.* at 99–100. Plaintiff was found guilty of the charges on June 23, 2021, and sanctioned with loss of privileges and reduction in line class. *Id.* at 99. His grievances appealing the disciplinary conviction were ultimately denied.

On July 2, 2021, plaintiff placed a sick call request for an MRI of his hand, claiming nerve damage from the use of force incidents. *Id.* at 54. He was seen in clinic on July 5, 2021, and prescribed anti-inflammatory pain medication with a referral for further evaluation. *Id.* at 57–58. Plaintiff submitted a second sick call request for an MRI of his hand on August 11, 2021, and was seen in triage that same day. No swelling, redness, warmth, or deformities were found, and a plan was made to refer plaintiff to a nerve specialist. *Id.* at 61–63, 72.

Plaintiff filed this lawsuit on November 9, 2021, claiming that the TDCJ Defendants used or failed to report the use of excessive force against him during the incidents of June 13, 2021, resulting in physical injury. He further claims that defendant Northcutt failed to treat his injuries immediately after the incident and lied in the medical records. Plaintiff seeks compensatory damages and criminal prosecution of the defendants.

Defendants move for summary judgment, and argue that plaintiff failed to exhaust prison administrative remedies prior to filing this lawsuit.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if the record discloses "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016); FED. R. CIV. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the summary judgment evidence is such that "a reasonable jury could return a verdict for the [nonmovant]." *Id.* "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *See Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

### B. Administrative Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Exhaustion is mandatory, and

strict compliance is required. *Porter*, 534 U.S. at 524. Moreover, a prisoner is required to exhaust his administrative remedies even if a particular remedy, such as money damages, is unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).

TDCJ provides a two-step procedure for processing administrative grievances and provides prisoners with detailed instructions on how to do so. *Johnson v. Johnson*, 385 F.3d 503, 515–16 (5th Cir. 2004). A prisoner must properly complete both the Step 1 grievance and Step 2 appeal to exhaust his administrative remedies. *See Hollingsworth*, 260 F.3d at 358. To initiate the grievance process, a prisoner must first file a Step 1 grievance. *Johnson*, 385 F.3d at 515. A Step 1 grievance must be filed within fifteen days of the complained-of incident, and the grievance is addressed by the prison administration at the prisoner's unit of assignment. *Id.* If the prisoner is dissatisfied with the response to a Step 1 grievance or if he receives an adverse decision to his Step 1 grievance, he may file a Step 2 grievance appealing the decision within fifteen days. The investigations into and resolutions of Step 2 grievances are handled at the state level. *Id.* A prisoner must pursue a grievance through both steps to fully exhaust his claims. *Id.*

The United States Court of Appeals for the Fifth Circuit holds that, "[U]nder our strict approach, we have found that mere 'substantial compliance' with administrative remedy

procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

## III. ANALYSIS

Defendants contend in their motion for summary judgment that plaintiff did not exhaust his prison administrative remedies prior to filing this action. In support, they submit Exhibit A, a compilation of prison grievances filed by plaintiff in June 2021 through February 2022 concerning the events of June 13, 2021. Defendants further submit Exhibit B, an affidavit of TDCJ employee Jessica Riley, who testifies as follows:

> I am the custodian of records for the Inmate Grievance Department, a part of the TDCJ located in Huntsville, Texas. Regarding grievances filed by inmate Roy Williams TDCJ #828343[:]
>
> On June 28, 2021, Williams filed a Step 1 Grievance No. 2021127992, concerning the disciplinary action taken against him after the use of force with defendants. This was returned to him on August 13, 2021.
>
> On August 19, 2021, Williams filed a Step 2 Grievance appealing Grievance No. 2021127992. Plaintiff indicates that he is satisfied with the Step 1 response.
>
> On July 27, 2021, Williams filed a Step 1 Grievance No. 2021141763, concerning the denial of medical care on July 26, 2021. He states that Major Brumley has instructed the medical department not to treat him for his injuries.
>
> There are no other defendants named in the July 27, 2021, grievance.
>
> Williams did not file a Step 2 for Grievance No. 2021141763.
> Williams did not file any further grievances concerning the events of June 13, 2021, or these defendants in 2021.
>
> Williams has not exhausted his administrative remedies as to the claim of excessive use of force on June 13, 2021. Grievance No. 2021127992 discusses

6

> the disciplinary hearing and was treated as such, not a complaint about excessive force. Williams did not file a Step 2 for Grievance No. 2021141763.
>
> Williams failed to mention the denial of medical care by Melissa Northcutt in either grievance filed.

(Docket Entry No. 44-1, Exhibit B.)

Exhaustion as to plaintiff's two claims – use of excessive force by the TDCJ Defendants and UTMB defendant Northcutt's denial of medical care on June 13, 2021 – is discussed below in detail.

A. <u>Disciplinary Conviction Appeals/Use of Force</u>

It is uncontested that the uses of force made the basis of this lawsuit took place at the Estelle Unit on June 13, 2021, and that plaintiff alleges in his complaint that the uses of force were excessive and caused him physical injury on that date. It is further uncontested that prison officials charged plaintiff with disciplinary infractions arising from the events of June 13, 2021, and that plaintiff was found guilty of the charges on June 23, 2021.

On June 28, 2021, plaintiff filed Step 1 grievance No. 2021127992 appealing the disciplinary conviction arising from the events of June 13, 2021. Although plaintiff argues in his response that the grievance was directed to the use of excessive force, his argument is refuted by the grievance itself. Plaintiff commenced his grievance with the following unmistakable assertion: "This is an appeal of case #20210207563. On 6/22/21 I was written Disciplinary Case #20210207563 stating that I refused the application of hand restraints." (Docket Entry No. 44-1, Exhibit A at 93.) Plaintiff argued in the Step 1 grievance that he did

7

not refuse restraints and that the sole purpose of the disciplinary case was to cover up the use of excessive force. *Id.* He complained of a prison-wide conspiracy against him. As relief, plaintiff asked that his line status be returned to its pre-disciplinary conviction level. *Id.* He did not request monetary damages for any alleged use of excessive force, nor did he mention any physical injuries resulting from the use of excessive force or identify any TDCJ employees who used excessive force against him.

On August 13, 2021, an Estelle Unit officer responded to the Step 1 disciplinary appeal grievance, informing plaintiff that the disciplinary conviction had been overturned. *Id.* at 94. Because plaintiff received the relief he had requested, a Step 2 appeal was unnecessary. Nevertheless, plaintiff filed a Step 2 appeal on August 19, 2021, stating that he was satisfied with the Step 1 response but needed to file a Step 2 appeal in order to pursue legal action against the officials who assaulted him. Plaintiff stated in the Step 2 appeal that the use of force was "inappropriate employee action" that violated his rights. No specific relief was requested, no prison employees were named, and no physical injuries were alleged. *Id.* at 91. A TDCJ officer responded to the Step 2 appeal on October 4, 2021, notifying plaintiff that, upon review at the state level, the disciplinary conviction was being upheld. *Id.* at 92.

Plaintiff presents no probative summary judgment evidence that he filed any additional grievances as to the uses of force or as to the Step 2 decision to uphold the disciplinary conviction. Thus, if plaintiff exhausted his administrative grievances as to the

alleged use of excessive force of June 13, 2021, his Step 1 and Step 2 grievances of June 28, 2021, and August 19, 2021, would need to constitute proper exhaustion under prison regulations and legal precedent. After examining the probative summary judgment evidence, the Court finds that the grievances did not exhaust plaintiff's claim for excessive force against the TDCJ Defendants.

By plaintiff's own language, the Step 1 grievance was an appeal of the disciplinary conviction, and not a grievance as to the uses of force themselves. Indeed, the sole relief plaintiff sought in the grievance was to set aside the disciplinary conviction sanction that had reduced his line status. Moreover, his attempt to exhaust his claim for use of excessive force through the Step 2 appeal did not comply with established prison grievance regulations or applicable case law. Step 1 and Step 2 grievances must grieve the same claim. By appealing the disciplinary conviction at Step 1 but attempting to grieve use of excessive force at Step 2, plaintiff did not exhaust the use of excessive force claim. New issues cannot be raised for the first time in a Step Two grievance and only one issue per grievance may be presented. *Randle v. Woods*, 299 F. App'x 466, 2008 WL 4933754 (5th Cir. November 19, 2008), citing *Woodford*, 548 U.S. at 92–93, and *Johnson*, 385 F.3d at 515. *See also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (instructing that inmates may present only one issue per grievance).[2]

---

[2] *See* https://www.tdcj.texas.gov/documents/Offender_Orientation_Handbook_English.pdf.

Moreover, the Fifth Circuit Court of Appeals in *Johnson* noted that the primary purpose of the exhaustion requirement is to give prison administrators "time and opportunity to address complaints internally" so that they may have a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit." 385 F.3d at 516, 522 (internal quotation mark omitted). This will generally require that the prisoner's grievance identify individuals who are connected with the problem. *Id.* The nature of the complaint will influence how much detail is necessary:

> If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know—and a prisoner could ordinarily be expected to provide—details regarding who was involved and when the incident occurred, or at least other available information about the incident that would permit an investigation of the matter. In contrast, a grievance in which an inmate says that his cell is habitually infested with vermin, or that the prices in the commissary are too high, could adequately alert administrators to the problem whether or not the grievance names anyone.

*Id.* at 517.

In this case, plaintiff did not identify in his Step 1 grievance any particular actions that he claimed gave rise to excessive force, nor did he identify any prison employees involved in the alleged wrongful conduct. This is significant, in that plaintiff claimed in his complaint that some of the TDCJ Defendants participated in the uses of force while others witnessed, but failed to report, the use of excessive force. Plaintiff's Step 2 appeal set forth even less information about any allegedly wrongful actions or the employees who undertook those actions. Although plaintiff claims in his complaint that the TDCJ Defendants used excessive

10

force against him on June 13, 2021, including such wrongful acts as jabbing him "with some type of a needle" and committing physical and sexual assault (Docket Entry No. 16, p. 6), he mentioned none of these alleged acts in his Step 1 appeal and did not identify any of the TDCJ Defendants as the perpetrators.

Because of the absence of sufficient detail in plaintiff's Step 1 grievance as to any alleged excessive force, and given the fact that he himself labeled the Step 1 grievance as an appeal of his disciplinary conviction, the Court finds that plaintiff did not provide reviewing officials with proper notice to address his alleged excessive force claim against the eight TDCJ Defendants named in this lawsuit. Thus, even when viewing the competent summary judgment evidence in the light most favorable to plaintiff, there is no genuine issue of material fact that he did not exhaust his administrative remedies regarding his claim for use of excessive force against the TDCJ Defendants.

The uncontroverted probative summary judgment evidence establishes that plaintiff failed to exhaust his use of excessive force claim against the TDCJ Defendants prior to filing this lawsuit. Accordingly, the TDCJ Defendants are entitled to summary judgment in their favor, and plaintiff's use of excessive force claim against them is **DISMISSED WITH PREJUDICE** for lack of exhaustion.[3]

---

[3]Because any new grievance filed by plaintiff would be time-barred under TDCJ's grievance procedures and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case. *See Bargher v. White*, 928 F.3d 439, 448 (5th Cir. 2019); *Marsh v. Jones*, 53 F.3d 707, 710 (5th Cir. 1995).

B. <u>Denial of Medical Care on June 13, 2021</u>

The grievances filed by plaintiff following the incidents made no claim that defendant Northcutt denied him medical care on June 13, 2021. Although plaintiff filed Step 1 Grievance #2021141763 on July 27, 2021, some six weeks after the uses of force, he complained in the grievance that he had been "kicked out of medical" without treatment on July 26, 2021, that defendant Brumley had instructed medical staff not to document his injuries from June 13, 2021, and that the use of force incidents were being concealed. As relief, he requested a transfer to another unit. (Docket Entry No. 44-1, Exhibit A at 42.)

Plaintiff made no mention in the grievance that defendant Northcutt had denied him medical care on June 13, 2021, nor did he file a Step 2 grievance as to the Step 1 Grievance #2021141763. Further, he made no request for monetary damages as to Northcutt. Consequently, the claim raised by plaintiff against Northcutt in this lawsuit was not exhausted, and the claim must be dismissed.

Although plaintiff alleges in his response that he exhausted his grievances against Northcutt, he relies on the Step 1 Grievance #2021141763. (Docket Entry No. 45.) As noted above, this grievance did not grieve plaintiff's claim that Northcutt denied him medical care on June 13, 2021, did not seek monetary damages, and was not followed by a Step 2 grievance.

Moreover, plaintiff alleges that he has yet to be seen by a "nerve specialist" as to numbness in his hand that began on June 13, 2021. However, he raised no factual allegations

in his complaint pleading a claim for deliberate indifference to medical needs against any defendant other than Northcutt, and the claim he raises against her in his complaint was limited to her denial of treatment on June 13, 2021. Thus, any claim regarding an on-going denial of evaluation by a nerve specialist is not a claim before the Court in this lawsuit.

The uncontroverted probative summary judgment evidence establishes that plaintiff failed to exhaust his claim against defendant Northcutt through both steps of the TDCJ grievance process prior to filing this lawsuit. Accordingly, the TDCJ Defendants are entitled to summary judgment in their favor, and plaintiff's claim against defendant Northcutt is **DISMISSED WITH PREJUDICE** for lack of exhaustion.[4]

## IV. CONCLUSION

For the above reasons, Defendants' motion for summary (Docket Entry No. 44) is **GRANTED** and this lawsuit is **DISMISSED WITH PREJUDICE** for failure to exhaust. Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on this the 12th day of January, 2023.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

---

[4]*See* n.1, *supra.*